# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Walter A.G.P.,

Civ. No. 26-2891(JWB/JFD)

        Petitioner,

v.

Markwayne Mullin, *Secretary of the United States Department of Homeland Security*; Todd Blanche, *Acting Attorney General of the United States*; David Easterwood, *Acting Field Office Director of Enforcement and Removal Operations, Saint Paul Field Office*; and Eric Klang, *Crow Wing County Sheriff, Warden of Crow Wing County Jail*,

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

        Respondents.

Pamela Guerrero, Esq., Bienvenidos Law Firm, counsel for Petitioner.

Carl Berry, Esq., and David W. Fuller, Esq., United States Attorney's Office, counsel for federal Respondents.

Petitioner Walter A.G.P. is a noncitizen who was detained within the United States and remains in immigration custody without any opportunity to seek release on bond. This case presents a narrow question: whether a noncitizen who previously entered the United States, continuously lived and worked in the community for five years, runs his own business, has a two-year-old child who is a U.S. citizen, and was later detained as an applicant for admission may be held without any meaningful opportunity to obtain an individualized determination regarding the justification for his continued detention.

The governing statute permits detention of noncitizens classified as applicants for

admission. But statutory authority to detain does not itself resolve whether the manner in which that authority is exercised satisfies the Due Process Clause. Whether the Constitution requires additional process under the circumstances presented here is a separate question. On the facts of this case, the answer is to provide Petitioner with a prompt bond hearing.

## BACKGROUND

Petitioner is a citizen of Ecuador. (*See* Doc. No. 1, Petition ¶¶ 14, 33.) He first entered the United States in June 2019, reentered the United States most recently in February 2021, and is a resident of Moorhead, Minnesota. (*Id.* ¶ 33; Doc. No. 7, Robinson Decl. ¶ 4.) He has been working in roofing with his company, Spring Field Roofing, LLC, which he has owned for about two years. (Petition ¶¶ 33, 35.) He also has a U.S. citizen two-year-old child. (*Id.* ¶ 33.) Petitioner has no criminal record, and prior to May 30, 2026, he had not had any contact with any immigration enforcement agents. (*Id.* ¶¶ 34, 35, 43.)

On May 30, 2026, local law enforcement agents detained Petitioner as he was running errands. (*Id.* ¶ 34.) Petitioner was first transferred to the Grand Forks County Correctional Center in North Dakota, and then to the Crow Wing County Jail in Brainerd, Minnesota. (*Id.*)

On May 31, 2026, the Department of Homeland Security ("DHS") served Petitioner with a Warrant for Arrest, a Notice of Custody Determination, and a Notice to Appear ("NTA"), which commenced removal proceedings and charged Petitioner with being present in the United States without admission or parole. (Robinson Decl., Exs. A,

2

B, C.) Petitioner was later transferred to Sherburne County Jail in Elk River, Minnesota, where he remains in custody. (Robinson Decl. ¶ 10.)

**DISCUSSION**

### I.      Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Petitioner bears the burden of establishing, by a preponderance of the evidence, that his detention lacks a lawful basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases). Petitioner claims his detention is unlawful because it violates the Due Process Clause of the Fifth Amendment. (Petition ¶¶ 38–50.)

The Petition challenges only the legal basis for Petitioner's present detention. It does not challenge the initiation of removal proceedings, the validity of any removal order, or the execution of removal. Jurisdiction therefore lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition challenges only Petitioner's detention, and not his removability or any removal order, the statutory jurisdiction-channeling provisions do not apply. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

### II.     Analysis

#### A.      Statutory Detention Authority

Respondents contend that Petitioner is an applicant for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

3

Section 1225 applies to "applicants for admission," defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States." *See* 8 U.S.C. § 1225(a). Section 1225(b)(2)(A) provides that applicants for admission who are "seeking admission" and "not clearly and beyond a doubt entitled to be admitted" "shall be detained" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A).

The Eighth Circuit recently affirmed Respondents' position that the phrases "applicant for admission" and "seeking admission" are the same. *Avila v. Bondi*, 170 F.4th 1128, 1134–36 (8th Cir. 2026). Under *Avila*, a noncitizen present in the United States who has not been lawfully admitted is treated as an applicant for admission for § 1225(b)(2)(A) purposes, regardless of whether they were encountered at the border or within the interior. And under that statutory provision, the government can detain without bond. *See id.* at 1138 (finding the district court "erred in holding that the Government could not detain Avila without bond under § 1225(b)(2)(A)"); *see also Jennings*, 138 S. Ct. at 851 (pointing out that § 1225(b)(2) does not reference bond hearings and finding that periodic bond hearings are not required as a matter of statutory construction).

Respondents assert that Petitioner, as a noncitizen who has not been lawfully admitted, is deemed to be an applicant for admission and subject to mandatory detention without bond, no matter how far from the border he was apprehended or how long he had been living inside the country.

That is an accurate statement of § 1225(b)(2)'s meaning under *Avila*. But statutory authority to detain does not itself resolve whether the manner in which that authority is exercised comports with the Constitution. Indeed, in *Jennings*, the Supreme Court

4

rejected a statutory construction that would have required bond hearings under § 1225(b)(2), while expressly declining to reach the constitutional due process arguments. 138 S. Ct. at 851.

The constitutional analysis here demands a separate inquiry. The Fifth Amendment's Due Process Clause protects noncitizens in removal proceedings from deprivations of liberty without due process of law. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Thus, even where Congress has authorized mandatory detention, this Court must still determine whether the procedures afforded satisfy the requirements of due process under the particular circumstances presented.

The question here becomes not whether Congress authorized Petitioner's detention under § 1225(b)(2)—it did, according to *Avila*. The question is whether Petitioner's continued detention in this case without any meaningful opportunity to obtain an individualized determination regarding the justification for that continued detention satisfies the Due Process Clause.

### B.    Constitutional Protections

The Fifth Amendment prohibits the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. That protection extends to all persons physically present within the United States, including noncitizens, regardless of whether their presence is lawful, unlawful, temporary, or permanent. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Although civil immigration detention is constitutionally permissible in appropriate circumstances, it must remain reasonably related to its nonpunitive purposes and must satisfy the requirements of procedural due process.

5

*Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

The process due under the Fifth Amendment depends on the particular circumstances presented. *See Smith v. Org. of Foster Fams. for Equal. & Reform*, 431 U.S. 816, 847 (1977) (recognizing that once a protected liberty interest is shown, the next step is to determine what process is due in the particular context.) That inquiry is governed by the familiar balancing framework established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which considers (1) the private liberty interest affected, (2) the risk of an erroneous deprivation through the procedures used and the probable value of additional safeguards, and (3) the government's interests.

Respondents contend that no procedural due process inquiry is needed. They argue that because Petitioner is treated by statute as an applicant for admission, Congress has already determined the circumstances under which detention is required and no additional process is constitutionally necessary. The authorities they cite for this proposition do not go so far.

Respondents cite *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). But that opinion does not foreclose Petitioner's claim. It addresses the constitutional status of applicants for admission during admissibility determinations and the legal consequences of parole for immigration law purposes. It does not hold that the Executive may continue to deprive a person physically present within the United States of liberty without constitutionally adequate procedures.

Respondents also rely on *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), arguing that because § 1225(b)(2)(A) does not make detention contingent

6

upon dangerousness or flight risk, procedures directed toward those questions are irrelevant. *Connecticut* is not controlling. There, the Supreme Court held that due process did not require a hearing on dangerousness before convicted sex offenders were placed on a state registry. *Id.* at 7–8. Because the registration statute operated solely on the fact of prior conviction, a determination on dangerousness was irrelevant to that statutory scheme. *Id.*

Here, by contrast, Petitioner does not seek a pre-detention hearing on facts that Congress made irrelevant. He contends that the Due Process Clause itself requires a meaningful opportunity for an individualized determination to justify the continued deprivation of his fundamental right to be free from physical confinement. *Connecticut* does not foreclose the constitutional inquiry presented in this case.

*Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), also cited, does not compel a different conclusion. *Banyee* concerned mandatory detention under § 1226(c), arising from criminal removability, and principally rejected a claim that detention had become unconstitutional because of its duration. Petitioner's claim is different. He does not seek a temporal limitation on detention. Instead, he challenges the absence of any individualized process to test whether continued detention remains justified in his case.

Applying the *Mathews* factors, Petitioner's liberty interest is substantial. Petitioner was not encountered at the border or while attempting to enter the United States. Rather, he was arrested within the interior after living in this country for over five years. During that time, Petitioner has been gainfully employed and now owns his own business. He also established community ties, has family living here, including a 2-year-old child, and

a stable relationship with the child's mother. Petitioner does not have a criminal record. Although those facts do not alter Petitioner's statutory status as an applicant for admission, they bear directly on the nature of the liberty interest at stake. Continued physical confinement under these particular circumstances constitutes a significant deprivation of liberty.

The second *Mathews* factor likewise weighs in Petitioner's favor. Respondents have never provided Petitioner any meaningful opportunity to obtain an individualized determination as to whether continued detention remains justified. The government's detention decision rests entirely on Petitioner's statutory classification as an applicant for admission. The point is that the existing procedures provide no mechanism for determining whether continued confinement remains justified under the particular circumstances of this case. That creates a substantial risk of erroneous deprivation.

The government's interests are also substantial. Congress has a legitimate and important interest in ensuring that applicants for admission appear for removal proceedings and in protecting the public where appropriate. Requiring an individualized custody determination, however, does not undermine those interests. It simply requires that continued detention be supported by an individualized assessment before a neutral decsionmaker. Where, as here, Petitioner has lived in the community for years, owns a business, has a U.S. citizen child who is 2 years old, and has no criminal history, the modest administrative burden associated with such a determination is outweighed by the significant private liberty interest at stake and the risk of erroneous deprivation. Under the particular circumstances presented here, Petitioner's continued detention without any

meaningful opportunity to obtain an individualized determination regarding the justification for that detention does not satisfy procedural due process. Accordingly, his continued detention violates the Due Process Clause of the Fifth Amendment.

### C. Remedy

The constitutional deficiency identified here lies not in the statutory authority to detain, but in the procedures afforded regarding Petitioner's continued detention. Although § 1225(b)(2) authorizes Respondents to detain Petitioner as an applicant for admission, that statutory authority does not eliminate the constitutional requirement that continued immigration detention satisfy due process under the circumstances presented here.

The appropriate remedy is to require Respondents to provide the constitutionally adequate process that has been lacking. Under the existing statutory and regulatory framework, a prompt individualized custody hearing before an Immigration Judge is the appropriate means of providing that process. This relief is not constitutionally required in every case arising under § 1225(b)(2). Rather, it is warranted under the particular facts of this case, including Petitioner's years-long presence in the United States without a criminal history, having a 2-year-old child who is a U.S. citizen, his role as a business owner in his community, and the absence of any individualized custody determination.

Respondents shall therefore provide Petitioner with an individualized custody hearing before an Immigration Judge within seven days of this Order. At that hearing, Respondents may seek continued detention based upon an individualized showing that Petitioner presents a flight risk, a danger to the community, or another lawful basis

warranting continued detention.

Petitioner's statutory classification as an applicant for admission remains relevant to Respondents' detention authority, but it does not, standing alone, resolve whether continued detention is constitutionally permissible under the circumstances presented here. If Respondents do not provide the required custody hearing within seven days, Petitioner shall be immediately released from custody.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1.      Petitioner Walter A.G.P.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2.      Petitioner's continued detention, under the particular circumstances presented here and without any meaningful opportunity to obtain an individualized determination regarding the justification for that continued detention, violates the Due Process Clause of the Fifth Amendment.

3.      Within **7 days** of the date of this Order, Respondents shall provide Petitioner with an individualized custody hearing before an Immigration Judge in Minnesota. At that hearing, Respondents may seek Petitioner's continued detention based upon an individualized showing that continued custody is justified.

4.      Respondents, or anyone acting in concert with Respondents, are **ENJOINED** from removing, transferring, or otherwise facilitating the removal of Petitioner from the District of Minnesota until the custody hearing required by this Order

10

has been conducted and the Immigration Judge has issued a custody determination.

5.      If Respondents do not provide the hearing required by Paragraph 3 within 7 days of the date of this Order, Petitioner shall be immediately released from custody.

6.      If Petitioner is released:

   a. **Release and Return of Property.** In the event that Respondents release Petitioner, he must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

   b. **Return to Minnesota.** If Petitioner is currently held outside Minnesota, Respondents shall initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

   c. **Weather-Related Delay.** If weather conditions present a safety risk at the time of release, Respondents may delay physical release only for the brief period necessary to ensure safe release. Any such delay must be strictly limited and may not be used to justify continued custody where a safe alternative is available.

   d. **No Recharacterization of Custody.** Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order would require Petitioner's release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

7.      **Notice.** On or before **August 6, 2026**, Respondents shall file a notice advising whether they have complied with this Order. If a custody hearing has been conducted, Respondents shall report the disposition of that hearing. If Petitioner has been released, Respondents shall state the date, time, and location of the release.

8.      Because the Petition is resolved on procedural due process grounds, Petitioner's other habeas claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: July 27, 2026                          *s/ Jerry W. Blackwell*
Time: 4:50 p.m.                           JERRY W. BLACKWELL
                                         United States District Judge